**COMMONWEALTH of Pennsylvania**

v.

**Craig Scott JAROWECKI, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 5, 2007.

Filed April 17, 2007.

Allan L. Sodomsky, Reading, for appellant.

Jason P. Lutcavage, Asst. Dist. Atty., Reading, for Com., appellee.

BEFORE: BENDER, PANELLA and TAMILIA, JJ.

OPINION BY TAMILIA, J.

¶ 1 Craig Scott Jarowecki appeals from the July 3, 2006, aggregate judgment of sentence of 37 months to 17 years imprisonment, followed by 20 years of special probation, imposed after he was convicted by a jury of eight counts of sexual abuse of children.[1]

¶ 2 In January of 2005, America Online (AOL) notified law enforcement authorities it had detected that a person utilizing the email address "cj8959@aol" had sent an image depicting child pornography through an email transmission. Record, Affidavit of Probable Cause. AOL, pursuant to an Order of court, revealed that the subscriber listed as the owner of the email address was appellant. *Id.* Acting on this information, authorities in Berks County obtained a search warrant for appellant's residence. *Id.* On January 20, 2005, police executed the warrant on appellant's residence, seizing computers and removable storage disks. *Id.*

¶ 3 A subsequent forensic examination of several of the LS–120 disks and CD–ROM disks[2] revealed several still and moving digital images that detectives suspected were child pornography. *Id.* After recovering these images, police consulted with a pediatrician who verified that the subjects in these images were clearly under the age of 18. *Id.* Shortly thereafter, appellant was charged with ten counts of sexual abuse of children.[3]

---

1. 18 Pa.C.S.A. § 6312(d), **Possession of child pornography (1).**

2. LS–120 disks are floppy disks used for external storage and are read through a computer's "A" drive. CD–ROM disks are compact discs used for external storage and are read through a computer's "D" drive. We will refer to both medium as "removable storage" in the analysis *infra.*

3. In addition to the eight counts of which he was convicted, appellant was also charged with two additional counts of sexual abuse for photographing and filming a minor. *See* 18 Pa.C.S.A. § 6312(b), **Photographing, videotaping, depicting on computer or filming sexual acts.**

¶ 4 Trial commenced on March 29, 2006, and the jury returned its guilty verdict on March 31, 2006.[4] At sentencing on July 3, 2006, the Commonwealth moved to apply the enhanced grading provision found in 18 Pa.C.S.A. § 6312, **Sexual abuse of children, (d)(2), Possession of Child Pornography,** which provides:

(2) A first offense under this subsection is a felony of the third degree, and a second or subsequent offense under this subsection is a felony of the second degree.

*Id.* The trial court granted the Commonwealth's motion and sentenced appellant to a term of twelve months to seven years imprisonment on the first sexual abuse count, grading the count as a third-degree felony. The court then applied section 6312(d)(2) and graded the remaining seven sexual abuse convictions as second-degree felonies. Accordingly, appellant was sentenced on the second through fourth counts of sexual abuse to three concurrent terms of 25 months to 10 years imprisonment, to run consecutively to the term of imprisonment imposed for count one. On the remaining four counts, appellant was sentenced to two 10–year terms of special probation.

¶ 5 After being granted an extension of time in which to file post-trial motions, appellant filed a post-sentence motion on July 25, 2006, which was denied the next day. This appeal followed.

¶ 6 Appellant raises the following issues for our review:

A. Whether the Court erred in permitting, on motion of the Commonwealth, and over objection of defense counsel, the Information to be amended on July 3, 2006, reflecting an enhancement in grading from F–3 to F–2 for Counts 2–8 as a result of Appellant's conviction on Count 1 of the Information?

B. Whether the enhanced penalty Appellant received at sentencing on Counts 2 through 8 as a result of his conviction on Count 1 was illegal as no statutory support was given?

C. Whether the verdict was against the weight of the evidence where the trial court erred in permitting Detective Stewart as an expert in the area of Mac computers when Detective Stewart's own testimony asserted that he was not?

D. Whether the verdict was against the weight of the evidence where AOL representative Don Colcolough, certified as an expert in law enforcement and legal affairs as it relates to AOL, testified to the "most common" method of using AOL to send an image?

E. Whether the verdict was against the weight of the evidence where the trial court permitted, over objection of defense counsel, the thumbnail pornographic images to be displayed to the jury via a Power Point slide presentation and enlarged to a size of 6 feet by 8 feet?

Appellant's brief at 6–7.

¶ 7 We note that appellant also raised three additional issues, the first of which challenges the discretionary aspects of sentencing while the latter two challenge the sufficiency of the evidence. Appellant's brief at 8. These issues have been waived by virtue of appellant's failure to comply with Pennsylvania Rule of Appellate Procedure 2116, **Statement of**

---

4. Prior to the conclusion of trial, appellant fled the country. He was later apprehended in Canada, however, and extradited to the United States in time for sentencing. Trial Court Opinion, Ludgate, J., 9/19/06, at 1, n. 1.

**Questions Involved,** (a) **General rule,** which provides:

> The statement of the questions involved must state the question or questions in the briefest and most general terms, without names, dates amounts or particulars of any kind. *It should not ordinarily exceed 15 lines, must never exceed one page,* and must always be on a separate page, without any other matter appearing thereon. *This rule is to be considered in the highest degree mandatory, admitting of no exception....*

*Id.* (emphasis added).

¶ 8 Appellant's statement of the questions involved easily exceeds 30 single-spaced lines and is almost one and a half pages in length. Appellant's brief at 7–8. Many of the lines are consumed with argumentative statements corresponding to the issues raised. In our analysis, therefore, we will consider only the arguments appellant raises on the first page of his statement of the questions involved. *Commonwealth v. Andrulewicz,* 911 A.2d 162, 164 n. 7 (Pa.Super.2006) (applying Rule 2116); *see also, Kanter v. Epstein,* 866 A.2d 394, 402 (Pa.Super.2004). We do not believe the language of Rule 2116 allows for exceptions.[5]

**Grading and Sentence Enhancement**

■ ¶ 9 In fashioning appellant's sentence, the trial court relied on the grading enhancement provision contained in 18 Pa.C.S.A. § 6312(d)(2), *supra,* which, as previously stated, provides:

> (2) A first offense under this subsection is a felony of the third degree, and a second or subsequent offense under this subsection is a felony of the second degree.

*Id.* Appellant contends the trial court erred by permitting the Commonwealth, on the date of sentencing, to amend the information to allow for counts two through eight to be prosecuted as felonies of the second degree rather than the third degree thus resulting in imposition of a harsher sentence. In forwarding this contention, appellant maintains the phrase "second or subsequent offense" does not allow for a conviction within a multiple count complaint to serve as a grading enhancement for another conviction contained within the same complaint.

¶ 10 Appellant's argument raises a pure question of law and, therefore, our standard of review is *de novo* and our scope of review is plenary. *Commonwealth v. Sloan,* 589 Pa. 15, 22, 907 A.2d 460, 465 (2006). A diligent research effort has failed to uncover any case in this Commonwealth's jurisprudence where the application of 18 Pa.C.S.A. § 6312(d)(2) has been challenged.

¶ 11 In allowing the Commonwealth to proceed, the trial court relied exclusively on the analysis in *Commonwealth v. Vasquez,* 562 Pa. 120, 753 A.2d 807 (2000). In *Vasquez,* our Supreme Court held that the phrase: "[I]f at the time of sentencing the defendant has been convicted of another drug trafficking offense" contained in 18 Pa.C.S.A. § 7508(a)(3)(i), **Drug trafficking sentencing and penalties,** allowed for a conviction within a multiple count complaint to serve as a sentencing enhancement for another conviction contained within the same complaint. *Vasquez* at 809. In relying on the *Vasquez* analysis, the trial court noted that 18 Pa.C.S.A. § 6312(d)(2), much like section 7508(a)(3)(i), does not make a distinction between convictions that arise from a multiple count complaint or from separate

---

**5.** The Commonwealth also points out appellant's violation of Pa.R.A.P. 2116, **Statement of Questions Involved,** (a) **General rule.** Appellee's brief at 7.

complaints and, hence, the logic in *Vasquez* was applicable. Trial Court Opinion at 4–5.

¶ 12 After careful consideration, we affirm the decision of the trial court and, in doing so, hold that one conviction in a multiple count complaint can serve as a "second or subsequent offense" for purposes of enhancing the grade of another conviction contained within the same complaint under the grading enhancement provision contained within section 6312(d)(2).

¶ 13 Appellant argues that the phrase "second or subsequent offense" contained in section 6312(d)(2) is identical to the language used in the Pennsylvania sentence enhancement provision for violent crimes. *See* 42 Pa.C.S.A. § 9714, **Sentences for second and subsequent offenses, (a)(2), Mandatory sentence.**[6] Appellant points out that the phrase "second and subsequent offense," which is the *title* to section 9714, has been construed by the Pennsylvania Supreme Court as requiring that the first conviction predate a second and subsequent conviction in order for the latter to be enhanced by the former under section 9714(a).[7] *See Commonwealth v. McClintic,* 589 Pa. 465, 909 A.2d 1241, 1252 (2006); *Commonwealth v. Shiffler,* 583 Pa. 478, 879 A.2d 185, 194 (2005); *Commonwealth v. Dickerson,* 533 Pa. 294, 621 A.2d 990, 992 (1993) (interpreting the precursor to the current version of section 9714(a)(2)). According to appellant, be-

cause the phrasing in section 6312(d)(2), now under consideration, is identical, we are compelled to find that an offense predate a second offense in order for the latter to be enhanced by the former for purposes of section 6312(d)(2).

¶ 14 We find the premise of appellant's argument to be flawed. Appellant's comparison of the language in 18 Pa.C.S.A. § 6312(d)(2) with the language in 42 Pa. C.S.A. § 9714(a)(2) is based on a misreading of both provisions. Section 6312(d)(2) states that enhanced grading is appropriate when the offense is the defendant's "second *or* subsequent" violation. (Emphasis added.) Section 9714(a)(2), on the other hand, is entitled "Sentences for second *and* subsequent offenses." (Emphasis added.) This linguistic distinction is critical. Under 42 Pa.C.S.A. § 9714(a)(2), an offense is only enhanced when it is an offender's second offense *and the offense was committed subsequent to the first.* No such sequential requirement exists in 18 Pa.C.S.A. § 6312(d)(2). Were we to read the conjunctive phrase in section 9714(a)(2) as being identical to the disjunctive phrase in section 6312(d)(2), we would basically be reading the words "and" and "or" interchangeably in the context of these two provisions, which would seem to undermine the General Assembly's intent in using two different phrases in very similar contexts. Indeed, while the term "sec-

---

**6.** The dissent echoes appellant's position. The language of 42 Pa.C.S.A. § 9714(a)(2) states:

(2) Where the person had at the time of the commission of the current offense previously been convicted of two or more such crimes of violence arising from separate criminal transactions, the person shall be sentenced to a minimum sentence of at least 25 years of total confinement, notwithstanding any other provision of this title or other statute to the contrary.

**7.** We note that we are permitted to consider the title of a statute in construing it. 1 Pa. C.S.A. § 1924, **Construction of titles, preambles, provisions, exceptions and headings** ("The headings prefixed to titles, parts, articles, chapters, and sections and other divisions of a statute shall not be considered to control but may be used to aid in the construction thereof.") As the phrase "second and subsequent offenses" does not appear in the text of 42 Pa.C.S.A. § 9714(a)(2) and, appellant must be relying on the statutory title to advance his argument.

ond" can be used to connote a difference in quantity or identity, the term "subsequent" is only used to connote a sequential relationship. *See* **Merriam Webster's Collegiate Dictionary** (11th ed.2003). To assume the General Assembly intended the term "second" and the term "subsequent" to be used as synonyms would be to assume imprecision.[8]

¶ 15 Our inquiry, however, does not end there as we still must construe what the phrase "second or subsequent," the actual phrase at issue, was intended to mean. Historically, the "longstanding and constant approach to habitual offender legislation in this Commonwealth" was to assume that anytime a recidivist sentencing provision is passed, the provision must be read to provide that a first offense must have occurred prior in time to the second for the latter to be enhanced by the former. *See Dickerson, supra.* The venerable rationale behind this approach, otherwise known as the "recidivist philosophy," has been stated as follows:

> It was not intended that the heavier penalty prescribed for the commission of a second offense should descend upon anyone, except the incorrigible one, who after being reproved, "still hardeneth the neck." If the heavier penalty prescribed for the second violation ... is visited upon the one who has not had the benefit of the reproof of a first convic-

tion, then the purpose of the statute it lost.

*Commonwealth v. Sutton,* 125 Pa.Super. 407, 189 A. 556, 558 (1937), *quoting Morgan v. Commonwealth,* 170 Ky. 400, 186 S.W. 132, 133 (1916); *see also, Shiffler, supra* at 192 (citation omitted).[9]

¶ 16 The *Vasquez* Court, in declining to mechanically apply the traditional approach, relied on the unambiguous language of language contained in 18 Pa. C.S.A. § 7508(a)(3)(i) ("At the time of sentencing"). In doing so, the Court majority implicitly recognized that the General Assembly was not relying on the recidivist philosophy when it passed 18 Pa.C.S.A. § 7508(a)(3)(i). Indeed, in *Commonwealth v. Bradley,* 575 Pa. 141, 834 A.2d 1127 (2003) the Supreme Court stated:

> The recidivist philosophy, while a valid policy, is not the only valid sentencing policy, nor is it a constitutional principle or mandate: "the legislature is therefore free to reject or replace it when enacting recidivist sentencing legislation. If the legislature enacts a statute which clearly expresses a different application, the 'recidivist philosophy' possesses no authority which would override clearly contrary statutory language."

*Id.* at 1135, *quoting Commonwealth v. Williams,* 539 Pa. 249, 652 A.2d 283, 285;

---

**8.** The analysis contained *infra* bolsters this point and makes it abundantly clear that the General Assembly's use of the phrase "second or subsequent" was not the product of imprecision or mistake.

**9.** *See e.g., Commonwealth ex. rel. Turpack v. Ashe,* 339 Pa. 403, 15 A.2d 359, 360 (1940) (construing the language "after having been three times convicted" in the Act of April 29, 1929, P.L. 854 to require that a defendant be convicted three times prior to the fourth conviction for the latter to be enhanced); *Commonwealth v. McDermott,* 224 Pa. 363, 73 A. 427, 428 (1909) (interpreting the word "con-

viction" contained in a recidivist statute as requiring a previous judicial decree before enhancement of a latter offense was lawful); *Commonwealth v. Lane,* 236 Pa.Super. 462, 345 A.2d 233, 234 (1975) (interpreting the phrase "after a prior conviction" contained in 35 P.S. § 780–113(b) to require that a triggering conviction occur prior to an offense in order for the latter to be enhanced); *Commonwealth ex. rel. Flory v. Ashe,* 132 Pa.Super. 405, 1 A.2d 685 (1938) (*per curiam*) (construing the phrase "after having been convicted" as comporting with the general rule).

*see also, Vasquez, supra* at 811 (Cappy, C.J., concurring).[10]

¶ 17 Subsequent to *Vasquez*, our Supreme Court decided *Shiffler* and *McClintic*, both of which interpreted 42 Pa.C.S.A. § 9714(a)(2). In *Shiffler*, the Court concluded that the language of section 9714(a)(2) indicated that the provision was recidivist in nature and, therefore, required that a defendant be convicted of two violent crimes at successive points in time before the "three strikes" provision could be invoked. *Shiffler, supra* at 195–196. The *Shiffler* Court's interpretation of 42 Pa.C.S.A. § 9714(a)(2) was bolstered by the fact that in 2000 the General Assembly, in the wake of the *Dickerson* holding that also interpreted the precursor to the current 42 Pa.C.S.A. § 9714(a)(2) as a recidivist provision requiring sequential convictions to trigger sentence enhancement, had amended the provision to delete the phrase: "For purposes of this section previous conviction shall include any conviction, whether or not judgment of sentence has been imposed or litigation is pending concerning that conviction." *See* 2000 Pa. Legis. Serv. 113. The General Assembly's amendment unequivocally demonstrated that it had approved of the *Dickerson* Court's recidivist reading of 42 Pa.C.S.A. § 9714. *McClintic, supra* at 1251–1252, *citing Shiffler*, supra at 196. The *McClintic* Court, operating with a slightly different set of facts, affirmed the *Shiffler* Court's analysis.[11]

¶ 18 This line of cases stands for the following proposition: "... [I]n *cases of recidivism*, we expect offenses to happen sequentially: first offense, first conviction, first sentence, second offense, second conviction, second sentence." *McClintic, supra* at 1251, *citing Dickerson, supra* at 992 (emphasis added). This proposition is wholly consistent with the historical approach discussed above. It is also wholly consistent with *Vasquez* in that *Vasquez* was not a "case of recidivism," i.e., the General Assembly did not adhere to the recidivist philosophy in passing the en-

---

10. Our Supreme Court has also stated: "The generally recognized purpose of such *graduated sentencing laws* is to punish offenses more severely when the defendant has exhibited an unwillingness to reform his miscreant ways and to conform his life according to the law." *Commonwealth v. McClintic*, 589 Pa. 465, 909 A.2d 1241, 1252 (2006), *quoting Shiffler, supra* at 195 (emphasis added).

We believe there is some significance in the fact that 18 Pa.C.S.A. § 7508, **Drug trafficking sentencing and penalties (a)(3)(i)** is not phrased like a traditional recidivist sentencing enhancement statute but, rather, is phrased as a *grading* enhancement with out any corresponding sentencing guidelines contained therein. This leaves a trial court some latitude in counteracting potentially overly aggressive prosecution tactics. *See Commonwealth v. Vasquez*, 562 Pa. 120, 753 A.2d 807, 811 (2000) (Cappy, C.J., concurring), *accord McClintic, supra* at 1246 n. 6.

11. In *Commonwealth v. Shiffler*, 583 Pa. 478, 879 A.2d 185, 194 (2005), the defendant simultaneously had pled guilty to three violent crimes. He was later simultaneously convicted of a separate set of violent crimes. This Court, on appeal, held that the defendant's prior convictions, even though entered simultaneously, could be used as "two strikes" for purposes of the "three strikes" provision. *See Commonwealth v. Shiffler*, 833 A.2d 1128, 1129 (Pa.Super.2003); we were reversed by the Supreme Court.

In *McClintic, supra* at 1244, the defendant had two prior sequential convictions for violent crimes. The defendant was later convicted of two robbery and burglary episodes that occurred sequentially, but were consolidated for prosecution. With respect to the first episode, the trial court sentenced defendant to two consecutive 25 years to life prison terms as called for by the three strikes provision. *Id.* The trial court imposed the same sentence for the second episode. *Id.* The sentences from the first episode and second episode were to run concurrently. *Id.*

hancement provision at issue in *Vasquez*.[12]

■ ¶ 19 The resulting question we must answer, therefore, is clear—does the plain language of 18 Pa.C.S.A. § 6312(d)(2), the enhancement provision *sub judice*, demonstrate that this provision is recidivist in nature.[13] For the reasons that follow, we conclude this language does not demonstrate as much.

¶ 20 In *Vasquez*, the Court drew an analogy between the unambiguous statutory language contained in 18 Pa.C.S.A. § 7508(a)(3)(i) ("At the time of sentencing") and both the United States Supreme Court and Third Circuit's unambiguous interpretation of the phrase "second or subsequent" in 18 U.S.C. § 924(c)(1)(C), **Penalties,** all of which allow for a conviction within a multiple count complaint to serve as an enhancement for another conviction contained within the same complaint. *Vasquez, supra* at 810 ("In this way, [18 Pa.C.S.A. § 7508(a)(3)(i) ] is substantially similar to the federal enhancement provision applicable to crimes committed while using a firearm, set forth at 18 U.S.C. § 924(c)(1)(C)."), *citing Deal v. United States*, 508 U.S. 129, 113 S.Ct. 1993, 124 L.Ed.2d 44 (1993), and *United States v. Casiano*, 113 F.3d 420, 426 (3d Cir.1997), *cert. denied* 522 U.S. 887, 118 S.Ct. 221, 139 L.Ed.2d 155 (1997).

¶ 21 Two years after *Vasquez* was handed down, the General Assembly amended 18 Pa.C.S.A. § 6312(d)(2) to include the recidivist provision *sub judice* and **the exact phrase** "second or subsequent of-

fense." 2002 Pa. Legis. Serv. 134. Additionally, the result prescribed by this phrase is not qualified or mitigated by another provision within the statute that would allow for reconsideration when sequential convictions have not been entered. *See contra, Shiffler, supra* at 196 (discussing the fact that 42 Pa.C.S.A. § 9714 contains a provision, § (d), that allows trial courts to reconsider the implementation of a three-strikes sentence when the defendant can demonstrate that a prior violent offense used to impose the sentence was vacated). It would be short sighted to assume the General Assembly's decision to include this phrase, without qualification, was mere coincidence. When the General Assembly amends a statutory provision it is presumed to know the state of the law as set forth in decisions of this Commonwealth's Supreme Court. *McClintic, supra* at 1251–1252, *citing Knox v. Bd. of Sch. Directors of Susquenita Sch. Dist.,* 585 Pa. 171, 888 A.2d 640, 652 (2005).

¶ 22 In conclusion, to hold that one conviction in a multiple count complaint cannot serve as a "second or subsequent offense" for purposes of enhancing the grading of another conviction contained within the same complaint under the recidivist offender provision contained within 18 Pa.C.S.A. § 6312(d)(2) would require us to disregard persuasive authority from the Pennsylvania Supreme Court, the United States Supreme Court and the Third Circuit Court of Appeals. It would also require us to uphold the notion that our General Assembly was sloppy with its

---

**12.** Notably, *Vasquez* is not mentioned in either *Shiffler* or *McClintic*. Thus, *Vasquez* was not expressly overruled by those cases. We also do not find *Vasquez* was implicitly overruled given the distinction in this Commonwealth's jurisprudence between recidivist enhancement provisions and non-recidivist enhancement provisions.

**13.** Both appellant, and the dissent, erroneously assume that any enhancement provision is *de facto* recidivist in nature. Whether this assumption follows from the untenable assertion that the language of 18 Pa.C.S.A. § 6312(d)(2) and 42 Pa.C.S.A. § 9714 is identical or whether this assumption follows from an erroneous reading of the *Dickerson* line of cases is unclear.

phrasing, even though it had over 100 years of judicial precedent upon which it could have relied in phrasing the provision unambiguously.[14] Further, it would require us to disregard an established pattern of interaction between our General Assembly and this Commonwealth's Judiciary with respect to the phrasing and interpretation of enhancement provisions. *See McClintic, supra* at 1251–1252. While we recognize that the "mechanical application of enhanced penalties" can serve to "merely ... add increased jail time at the whim of the prosecuting authority," we feel the history behind the phrase "second or subsequent," and other alternative phrasing that was bypassed, is compelling. *See Vasquez, supra* at 811 (Cappy, C.J., concurring), *accord McClintic, supra* at 1246 n. 6. Consequently, we find the trial court correctly applied 18 Pa.C.S.A. § 6312(d)(2).

## Challenges to the Weight of the Evidence

▆▆▆ ¶ 23 Turning to appellant's three challenges to the weight of the evidence, our standard of review is as follows:

> [T]he weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact ... thus, we may only

reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence, ... rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Kim,* 888 A.2d 847, 851 (Pa.Super.2005) (citations and quotations omitted). A motion for a new trial based on a challenge to the weight of the evidence concedes the evidence was sufficient to support the verdict. *Commonwealth v. Davis,* 799 A.2d 860, 865 (Pa.Super.2002).

¶ 24 Initially, we note that the nature of the issues raised by appellant in support of his "weight of the evidence" claims appear to be more akin to alleged evidentiary errors, specifically, that the trial court erred by admitting certain testimony and demonstrative evidence. In an effort to be fair as well as thorough, we have considered the admissibility of the challenged evidence as well as the impact it may have had on the trial court's ruling that the jury's verdict was supported by the weight of the evidence.

¶ 25 Appellant first contends the trial court erroneously decided to admit the

---

**14.** The General Assembly had any number of phrases that it could have chosen to use to clearly and unambiguously express an intention to make 18 Pa.C.S.A. § 6312(d)(2) a recidivist provision. *See e.g., Dickerson, supra* at 769 ("Sentences for second and subsequent offenses"); *Ashe,* 15 A.2d at 360 ("after having been three times convicted"); *McDermott,* 73 A. at 428 (attaching a sequential significance to the General Assembly's use of the word "conviction" in a recidivist provision); *Lane,* 345 A.2d at 234 ("after a prior conviction"); *Commonwealth ex rel. Flory,* 1 A.2d at 685 ("after having been convicted").

Appellant would like us to believe that the General Assembly, instead of employing any of the above language, decided to choose a phrase that would be imprecise, if we advocated appellant's reading, by mere coincidence, even though our Supreme Court approvingly discussed the very phrase at issue two years prior to the General Assembly's employment of it. This we simply cannot do. Tellingly, the General Assembly decided to omit even the word "conviction" from 18 Pa.C.S.A. § 6312(d)(2).

expert testimony of Detective Donald Stewart. Appellant argues that because the detective did not specialize in working with the Macintosh operating system, his testimony that it would have been impossible for appellant to save the images to LS–120 and CD–ROM disks without first viewing them was highly prejudicial. Detective Stewart, an expert in the area of forensic examination of computers and data recovery, testified that the subject images had been transferred from appellant's hard drive to removable storage, where they were saved in corresponding folders with descriptive names. N.T., 3/29–31/06, at 239. From this testimony, it is apparent the jury made the inference that appellant would have had to view the images before placing them in folders with names describing the images contained therein.

¶ 26 Appellant's argument is premised on a mischaracterization of the testimony; hence, it is without merit. At trial, Detective Stewart testified that while he may not have had a great deal of experience with Macintosh computers, based on his experience and training, he was familiar with how to examine the computer to review data that has been preserved. *Id.* at 187. Notably, in the exchange relied upon by appellant (N.T., 3/29–31/06, at 239, appellant's brief at 19), Detective Stewart did *not* testify appellant had to have viewed the images before transferring them.

■ ¶ 27 Moreover, the qualification of an expert is within the discretion of the trial court, and the common law evidentiary standard for assessing the qualifications of expert witnesses is a liberal one. *See Commonwealth v. Conklin*, 587 Pa. 140, 148, 897 A.2d 1168, 1172 (2006) (reasoning that as long as a witness "has any reasonable pretension to specialized knowledge of the subject under investigation—knowledge which may be gleaned from training and experience as well as from formal education—he may be permitted to testify in the discretion of the trial court"). Regardless of the weight the jury gave to the detective's testimony, the evidence of record established the images were downloaded to discs by the appellant and those discs were found in his home. The trial court did not err by admitting the detective's testimony, and the admission of this testimony did not adversely impact the trial court's ruling that the verdict was supported by the weight of the evidence.

■ ¶ 28 Appellant next contends the trial court erred in allowing the expert testimony of Don Colcolough, the Director of Investigations at AOL, who was called by the Commonwealth to rebut appellant's claim that the images in question were received and transmitted through no fault of his. *See* N.T. at 422–423. Appellant argues Colcolough's testimony regarding the methods by which a picture can be attached to an email within AOL exceeded the area of expertise for which he was qualified, that being, as an expert concerning the legal affairs and law enforcement of AOL. Appellant's brief at 21. According to appellant, Colcolough was not qualified to testify that, "it would have been impossible for Appellant to embed an image in an email without seeing the image." *Id., citing* N.T. at 441. The apparent crux of this contention is that it was highly prejudicial to allow Colcolough to testify about AOL's common email methods in relation to Macintosh computers because it was outside the scope of his admitted expertise with Windows.

¶ 29 In its offer of proof, the Commonwealth stated Colcolough would testify about, "how an image was intercepted by AOL's security protocol, which is his department, being sent from [appellant's] account. . . . The image in question was identified as child pornography. The image was embedded in the AOL e-mail, and it

was a newly-created document [by appellant's account]." N.T. at 422. Appellant objected, on the record, to Colcolough's proffered testimony on the bases (1) he was "not an expert in relation to the identification of child pornography[;]" and, (2) Colcolough's testimony regarding certain identifying marks, unique to AOL and used by AOL to identify the image in question as child pornography, did not prove as a matter of law that the image at issue was indeed child pornography. *Id.* at 423–425.

¶ 30 On appeal, appellant's objection to Colcolough's testimony does not invoke either of the objections voiced at trial; his challenge on appeal is limited to Colcolough's expert testimony regarding how an image may be embedded in an email transmitted on AOL. For that reason, we may find the argument waived for appellate review. *See Commonwealth v. Koehler,* 914 A.2d 427 (Pa.Super.2006). Moreover, in his role as Director of Investigations at AOL, Colcolough testified regarding the protocol AOL employs when discerning whether an image sent is possibly child pornography, and also concerning the two manners in which images may be sent on AOL. He explained, in part, that AOL is not concerned with the recipients of pornography, but with the senders, and those senders are identified by its system when a brand new document is created, and attached to or embedded within that document is a pornographic image. We agree that such testimony, concerning how images, pornographic or not, may be attached or included within an AOL email, is clearly and necessarily within the ambit of Colcolough's expertise, and such expertise was not offered limited to Windows-based systems. *See* N.T. at 445.

¶ 31 We find the court did not err by allowing this testimony, and the trial court's decision to vindicate the jury's al-

leged reliance on this evidence does not shock our conscience, as even appellant fails to point to any evidence of record demonstrating the AOL email program works differently when used with the Windows and Macintosh operating platforms.

■ ¶ 32 Finally, appellant argues the verdict was against the weight of the evidence in that the trial court erred by permitting the Commonwealth to enlarge the child pornography, the photographs and video clips forming the basis of criminal charges, and show them on a large screen in a Power Point presentation. Appellant contends the presentation, "unduly heightened the graphic nature of the images to the jury, thereby giving the images far more weight than appropriate." Appellant's brief at 22.

¶ 33 Appellant again attempts to bootstrap an evidentiary issue into our weight of the evidence analysis by arguing the trial court erred in admitting the images. Appellant, however, failed to object to the admission of the images when they were offered into evidence, thereby resulting in waiver. N.T., 3/29–31/06, at 310. *See e.g., Commonwealth v. Boyd,* 451 Pa.Super. 404, 679 A.2d 1284, 1289–1290 (1996), *citing Commonwealth v. Garcia,* 443 Pa.Super. 414, 661 A.2d 1388 (1995). When the evidentiary ground for appellant's argument is stripped away, it becomes apparent that the argument is simply a bald averment. Moreover, the admission of such evidence is within the trial court's discretion, and when determining whether the prejudicial effect is outweighed by probative value, the court must consider the nature of the crime, the evidence being offered and all attendant circumstances. *See Commonwealth v. Enders,* 407 Pa.Super. 201, 595 A.2d 600, 604 (1991).

¶ 34 We find the court did not err by admitting the images, and we further find that the verdict was not so contrary to the

evidence as to shock our sense of justice. The court did not palpably abuse its discretion by finding the jury's verdict was supported by the evidence. *See Kim, supra.*

¶ 35 Judgment of sentence affirmed.

¶ 36 Concurring and Dissenting Statement by BENDER, J.

CONCURRING AND DISSENTING STATEMENT BY BENDER, J.

¶ 1 While I concur with the majority's analysis as to issues C, D, and E and with the waiver of issues F, G and H, I respectfully dissent to the majority's determination as to issues A and B. I believe that because the language of 18 Pa.C.S. § 6312(d)(2) is substantially identical to the language of 42 Pa.C.S. § 9714, issues A and B are controlled by *Commonwealth v. Dickerson,* 404 Pa.Super. 249, 590 A.2d 766 (1991), *aff'd,* 533 Pa. 294, 621 A.2d 990 (1993), and that, therefore, the case should be remanded for resentencing consistent with *Dickerson. See also Commonwealth v. McClintic,* 589 Pa. 465, 909 A.2d 1241, 1247 (2006).