J. S25036/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
v. :
:
TYRIK VERNON, : No. 2170 EDA 2015
:
Appellant :


Appeal from the Judgment of Sentence, October 19, 2004,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0206571-2004


BEFORE: BENDER, P.J.E., RANSOM, J., AND FORD ELLIOTT, P.J.E.


MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED JUNE 21, 2017**

Tyrik Vernon appeals the judgment of sentence in which the Court of

Common Pleas of Philadelphia County sentenced[1] him to serve a sentence of

7½ to 15 years' imprisonment for robbery along with concurrent sentences

of 2 to 4 years for attempted murder, 2-4 years for aggravated assault, and

1-2 years for firearms not to be carried without a license.[2] After careful

review, we affirm.

The pertinent procedural and factual history, as recounted by the trial

court, is as follows:

---

[1] Originally, appellant was sentenced to an aggregate term of 10½ to 21 years' imprisonment with all sentences consecutive to one another. The trial court subsequently amended the sentences to run concurrently.

[2] 18 Pa.C.S.A. §§ 3701, 2502, 2702, and 6106, respectively.

After [appellant's] sentencing, his counsel filed a timely notice of appeal to the Superior Court. Direct appeal was initially dismissed on August 10, 2006 because counsel failed to file a brief. [Appellant] then filed a ***pro se*** PCRA petition on August 21, 2006. This was never addressed by the court and no attorney was ever appointed.

On March 28, 2011 [appellant] filed another PCRA petition. This one incorporated his 2006 petition. Peter A. Levin, Esquire was appointed and he filed an amended PCRA petition on November 9, 2012. One of his allegations is that trial counsel had been ineffective for failing to file Petitioner's brief. Initially, Mr. Levin's petition was dismissed for untimeliness without an evidentiary hearing but after appeal and remand, an evidentiary hearing took place and an appeal ***nunc pro tunc*** was granted after finding that court interference had prevented [appellant's] 2006 PCRA timely ***pro se*** petition from being heard.

[Appellant] has filed a Rule 1925 Statement of Matters Complained Of and claims his conviction should be reversed because of unreliable and/or tainted identification. He also claims the verdict is against the weight of evidence. . . .

. . . .

Complainant Kenneth Crosby testified that on October 3, 2003 he was walking on Diamond Street in North Philadelphia on his way to a friend's house. At approximately 1:50 [p.m.], he saw [appellant] at the corner of 18th and Diamond in broad daylight and approached him on the street. Crosby asked [appellant] if he knew "where they sell weed." They were approximately 10 inches apart from each other. [Appellant] told Crosby to follow him and the two walked together for about 5 minutes, spanning two blocks. [Appellant] walked on Crosby's right side, approximately 6 inches from him. At about 2:00 [p.m.], [appellant] stopped on nearby Page Street to make a phone call which lasted

approximately 2 minutes. Crosby stood and waited for [appellant] from about 2 to 3 feet away during the phone call.

Crosby and [appellant] were standing together on the 1500 block of Page Street when [appellant] pushed Crosby up against a car and pressed a silver gun against his stomach. Crosby testified he was able to see [appellant] close-up and unobstructed. [Appellant] demanded Crosby's money. At first, Crosby said that he could not give him any because it was not his. [Appellant] then threatened to shoot Crosby in the stomach. Crosby then gave up $100. [Appellant] instructed Crosby to stand still and then told him to walk away. Crosby began to run away but several seconds later, [appellant] shot Crosby in the back. As [appellant] fled, the victim saw him run up Page Street and make a right.

Crosby talked to detectives at the hospital and was later shown a photo array at a police station. Based on his description, detectives showed Crosby approximately 30 pictures of men on a computer. The victim spent 10 minutes looking at pictures and identified [appellant]. Crosby remembered a black mark on the man's head and [appellant's] face. Crosby told a detective he was sure he identified the right person and the detective printed out a picture of [appellant] which Crosby signed. At trial, Crosby testified he was still sure.

Eyewitness Natasha Jenkins testified that on October 3, 2003, she also saw and heard [appellant] shoot Crosby on the 1500 block of Page Street. Jenkins was in the passenger seat of a car with her neighbor, Diane Washington returning from grocery shopping. The car was parked on the opposite side of the street approximately 15 feet from [appellant] and they were about to unload the car. Jenkins testified that she saw two men "tussling" and saw [appellant] demanding money. She saw [appellant] hit Crosby in the head with a gun. Seeing that a gun was involved, Jenkins told her neighbor to close the car door, and forget unpacking the groceries. Two

shots were fired and Jenkins saw [appellant] run west on Page Street. Jenkins testified that she saw [appellant's] face.

Jenkins talked to the police approximately an hour after the shooting and gave a statement. She identified [appellant] as "about 5'6", 5'7", braids hanging from the back. He had on a red baseball cap, 76'ers jacket red and blue." Police asked her to come to a police station to look at pictures and she was shown approximately 50 photos but could not make an identification that night.

On October 14, 2003[,] a detective visited Jenkins at her home. She was shown sixteen photos and identified a photo of [appellant] but said she wasn't 100% sure. At trial she testified to being "85%-95%" sure. She testified she wasn't certain because the man who committed the crime had braided hair at the time, while the man in the picture and [appellant] at trial did not. Nevertheless, Jenkins testified that the man in the picture had the same face as the man whom she saw shoot Crosby.

Jenkins' neighbor and the driver of the car, Diana [sic] Washington, told the jury she had a clear view of what happened and who was involved. From about ten feet away, Washington saw two men struggling. She told [appellant] to "get off of him." While Washington did not see a gun, she testified she heard two shots go off. After the first shot, Washington began to drive west on Page Street. She then heard another shot. She drove around the block, from Norris to 16th Street, and returned to Page Street where she saw Crosby had fallen on the street.

On the night of the shooting, Washington did not talk to police and was not forthcoming the next day when detectives visited her house. But ten days later, on October 14, 2003, detectives returned to her house and this time she took time and viewed a group of 8 photographs. She described Crosby's assailant as a young man with braids, wearing a red

hat and a red shirt with number 3. She testified his braids hung out of his baseball cap. Washington identified a picture of [appellant] as the doer, and she signed the photo.

At trial, Washington testified police had not said anything to her when they showed her the pictures other than whether she could identify the guy she saw.

Trial court opinion, 8/22/16 at 1-4.

On October 19, 2004, the trial court conducted a sentencing hearing. At the commencement of the hearing, appellant's attorney, Jeffrey Muldawer, Esq., brought to the attention of the trial court a **pro se** motion for extraordinary relief prepared by appellant in which appellant argued that the evidence was insufficient to support a conviction and that the verdict was against the weight of the evidence. The trial court denied the motion.

Although the trial court imposed a sentence at the hearing with consecutive rather than concurrent terms, the docket indicates that sentencing was deferred until January 20, 2005. On that date, the trial court imposed the sentence from which appellant appeals.

Before this court, appellant contends that the verdict was against the weight of the evidence.

> [T]he weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of

- 5 -

> the finder of fact . . . thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence, . . . rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.
>
> *Commonwealth v. Kim*, 888 A.2d 847, 851 (Pa.Super. 2005) (citations and quotations omitted). A motion for a new trial based on a challenge to the weight of the evidence concedes the evidence was sufficient to support the verdict. *Commonwealth v. Davis*, 799 A.2d 860, 865 (Pa.Super. 2002).

*Commonwealth v. Jarowecki*, 923 A.2d 425, 433 (Pa.Super. 2007).

Before addressing the merits of appellant's argument, we must address the Commonwealth's contention that appellant waived this issue. The Commonwealth asserts that the issue is waived because appellant did not file a post-sentence motion or motion for reconsideration until many years after his sentence became final. However, appellant made the claim concerning the weight of the evidence in his motion for extraordinary relief before the trial court on October 19, 2004. This court is satisfied that appellant preserved his claim. *See* Pa.R.Crim.P. 607(A).

Turning to the merits of the argument, appellant claims the verdict was against the weight of the evidence because the identification evidence was unreliable and conflicting, the witnesses made no identifications when

they were shown photographs but later identified appellant; no lineup as to identification was ever held, even though one was ordered at the preliminary hearing; there was conflicting testimony by the Commonwealth witnesses as to whether the assailant had braids; and defense witnesses testified as to never seeing appellant with braids.

> In reviewing the propriety of identification evidence, the central inquiry is whether, under the totality of the circumstances, the identification was reliable. The purpose of a "one on one" identification is to enhance reliability by reducing the time elapsed after the commission of the crime. Suggestiveness in the identification process is but one factor to be considered in determining the admissibility of such evidence and will not warrant exclusion absent other factors.
>
> As this Court has explained, the following factors are to be considered in determining the propriety of admitting identification evidence: the opportunity of the witness' [sic] to view the perpetrator at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the perpetrator, the level of certainty demonstrated at the confrontation, and the time between the crime and confrontation. The corrupting effect of the suggestive identification, if any, must be weighed against these factors. Absent some special element of unfairness, a prompt "one on one" identification is not so suggestive as to give rise to an irreparable likelihood of misidentification.

*Commonwealth v. Brown*, 23 A.3d 544, 558 (Pa.Super. 2011) (*en banc*) (internal citations and quotation marks omitted).

Initially, appellant contends that the testimony of Kenneth Crosby ("Crosby"), the victim, was unreliable for multiple reasons and the accuracy

of his prior descriptions of his assailant is dubious. When Crosby initially described his assailant to the police, he stated that the assailant had braided hair that stuck out the back of his cap down his neck. (Notes of testimony, 8/25/04 at 44.) However, during trial, Crosby testified that his assailant did not have braided hair and that he said that he did because he was "nervous; I was in pain." (*Id.* at 45.) Appellant asserts that Crosby gave an initial description of his assailant and then recanted that description at trial to better describe the person that he subsequently identified as his assailant, appellant.

Appellant further charges that Crosby was able to identify appellant in a photo array due to "a black mark on his head." (*Id.* at 38.) However, Crosby did not include the black mark in his initial description made to the police. (Notes of testimony, 8/27/04 at 47.) Appellant asserts that Crosby would not have been able to see this alleged black mark at the time of the incident because it would have been covered by a cap. Appellant argues that Crosby attempted to untruthfully rehabilitate his earlier inconsistent description by trying to refer to another identifying characteristic of appellant.

Appellant points out other inconsistencies in Crosby's testimony in that he testified that he had never seen appellant before (notes of testimony, 8/25/04 at 50), but also stated that he had seen him once or twice. (*Id.* at 51.) Additionally, appellant asserts that Crosby's testimony was unreliable

and conflicting because he was a drug-selling and drug-using runaway who repeatedly changed his story regarding the description of appellant.

Regarding the reliability of Crosby's identification of appellant based on the factors set forth in **Brown**, Crosby certainly had the opportunity to see his assailant as he testified that he talked to him and walked with him before the attack, and it stands to reason that he would take note of someone who robbed and shot him. Furthermore, Crosby testified that he was "101 percent sure" that appellant was his assailant. (**Id.** at 52.) While it is true that Crosby did describe appellant as having his hair in braids at the time of the attack, and he did not have braids in the photograph where Crosby identified appellant, this fact alone does not render the identification unreliable, even though a defense witness testified he had never seen appellant wear braids. **See Commonwealth v. Maute**, 485 A.2d 1138, 1144 (Pa.Super. 1984) (Evidence of a conflict in evidence is not fatal to the Commonwealth's case because the Commonwealth if not bound by everything its witnesses say, and the jury can believe, all, part, or none of the testimony.) Further, Diane Washington ("Washington") also described the assailant with braids. **Id.** at 105. Given the totality of the circumstances, Crosby's identification was sufficiently reliable to support the determination that appellant was the assailant.

Appellant next contends that the identification made by another witness, Natasha Jenkins ("Jenkins"), was also conflicting and unreliable.

First, on the day of the incident, Jenkins could not identify the assailant when asked to look at pictures on a computer of possible perpetrators. However, she later identified appellant as the assailant when the police showed her two cards that contained 16 photographs on October 14, 2003. (Notes of testimony, 8/25/04 at 74-75.) Appellant characterizes it as "puzzling" that Jenkins could not initially make an identification but could 11 days later. Further, Jenkins testified that she was only 85-95% sure of her identification of appellant as the assailant. Jenkins changed her description of the assailant from light to dark skinned. (*Id.* at 63, 80.) Jenkins also initially identified the assailant as shorter than the 5'11" that the parties stipulated was appellant's height. (*Id.* at 80; 8/27/04 at 75.) Appellant argues that Jenkins's identification was the product of suggestiveness, and her testimony was unreliable and conflicting.

With respect to Jenkins's identification of appellant, she was able to view the perpetrator at the time of the crime and at fairly close range. Jenkins was not totally accurate in her description of appellant in terms of his height. Though not totally certain of her identification of appellant, she was approximately 90% certain. Although appellant asserts that the inconsistencies in her testimony were the result of suggestiveness by the police department, there is nothing in the record to support such a conclusion. Once again, despite some inconsistencies, a jury could find appellant guilty based on this testimony.

Appellant also argues that the testimony of the third Commonwealth witness, Washington was also unreliable and conflicting in that she did not identify appellant until 11 days after the incident took place. She gave a description of the assailant as having braids hanging out the back of his baseball cap and a medium complexion. (Notes of testimony, 8/25/04 at 105.) Despite that description, Washington identified appellant from a list of photographs even though the photo did not depict any braids. (*Id.* at 106.) Appellant also argues that this identification is the product of suggestiveness. Appellant asserts that the court in the preliminary hearing ordered another lineup which might have alleviated these reliability and consistency problems.

Similarly, with respect to Washington's testimony, she witnessed the crime or at least some of the crimes as they occurred. She testified that she observed the incident from a close vantage point. As with Crosby's initial description, Washington believed that braids were hanging out from under appellant's cap. (*Id.* at 106.) Washington testified that she never told anyone she was not completely sure of the identification of appellant. (*Id.* at 107.) As with the other witnesses, the inconsistencies in the descriptions were left to the jury to render its credibility determinations. Once again, appellant raises the issue of suggestiveness, but there is nothing in the record to support that conclusion. Similarly, it is unclear what a lineup would establish.

As the identification testimony was sufficiently reliable and was found credible by the jury, the verdict is not so contrary to the evidence as to shock the conscience. Based on the record before this court, we do not find that the trial court abused its discretion when it declined to grant appellant's post-trial motion concerning the weight of the evidence.

Judgment of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>6/21/2017</u>