J. S04045/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
v.   :
  :
JESSE ROBERT CALDARAZZO,   :   No. 1076 MDA 2017
  :
Appellant   :


Appeal from the Judgment of Sentence, June 7, 2017,
in the Court of Common Pleas of York County
Criminal Division at No. CP-67-CR-0006765-2015


BEFORE:  SHOGAN, J., DUBOW, J., AND FORD ELLIOTT, P.J.E.


MEMORANDUM BY FORD ELLIOTT, P.J.E.:      **FILED MARCH 28, 2018**

Jesse Robert Caldarazzo appeals the judgment of sentence in which the Court of Common Pleas of York County sentenced him to serve a term of 9 to 18 months' imprisonment for simple assault[1] followed by an aggregate term of 2 years' probation for recklessly endangering another person and disorderly conduct.[2]  After careful review, we affirm.

The trial court set forth the following factual background and procedural history:

> On or about August 28, 2015, the victim, David Schlenoff, went to a bar.  [A]ppellant and Charles Bull,[3] who was the co-defendant, also went

---

[1] 18 Pa.C.S.A. § 2701.

[2] 18 Pa.C.S.A. § 2705, and 18 Pa.C.S.A. § 5503, respectively.

[3] Charles Bull was convicted of the same crimes as appellant.  A review of this court's docket indicates that Bull did not appeal his judgment of sentence.

to the same bar that night. While at the bar, Schlenoff talked to Sarah Caldarazzo,[Footnote 2] who was [a]ppellant's sister and Bull's girlfriend. Before the bar closed, Schlenoff, [a]ppellant, and Bull left the bar and went to the parking lot separately, and a commotion ensued. The parties disagreed on the particulars of the commotion.

> [Footnote 2] Appellant[4] had previously dated Sarah Caldarazzo for a short period of time.

During the trial, numerous witnesses testified about the commotion. The first two witnesses were Robert Webber and Brent Westcoat, who were also Schlenoff's friends. Both Webber and Westcoat testified that as they were leaving, they noticed a commotion involving Schlenoff, [a]ppellant, and Bull. Webber saw [a]ppellant and Bull beating and especially kicking Schlenoff, who was on the ground in the fetal position. Westcoat similarly testified that there were a lot of downward punches from [a]ppellant and Bull against Schlenoff, but he was not sure if there was kicking, though [a]ppellant and Bull were standing while [a]ppellant[5] was on the ground.

Upon seeing the commotion, Westcoat and Webber ran up to them, and, then, [a]ppellant and Bull ran and got into a car, which was being driven by someone else. As a result of [a]ppellant and Bull's actions, Schlenoff was barely moving. Webber stated that Schlenoff's eyeball was busted and bloody, and that his hands were busted up. Westcoat testified that Schlenoff had blood all over his mouth and that his eye was swollen. They drove Schlenoff back to his parents' home, and he was soon taken to the hospital.

---

[4] The trial court mistakenly referred to Schlenoff as "appellant."

[5] Though the trial court states that appellant was on the ground, it appears from the context that the trial court meant that Schlenoff, the victim, was on the ground.

Schlenoff testified that he remembered leaving the bar, but not what happened immediately afterwards. He remembered waking up on the ground and that he "could hardly see out of [his] eyes." He stated that he "was concussed, and [he] was just in a daze, and [his] face was just swelled up, and there was blood coming out of [his] nose and [his] eyes. . . ." Before going to the hospital that night, his sister took pictures of his injuries.

Throughout his testimony, Schlenoff often stated that he could not remember things. After the Commonwealth asked him about his lack of memory, Schlenoff explained that he had "multiple concussions and brain injuries from that night" and that was impacting his memory.

Schlenoff further described that he had to have facial reconstruction as a result of a shattered orbital bone. Also, he had a pinched nerve and he required a surgery for his shoulder. He required three months of physical therapy and injections as well.

Because of that night, Schlenoff suffers from short and long term memory problems, double vision and sensitivity in the eye that was injured. He also had to quit college due to his injuries.

Later, [a]ppellant's sister, Sarah Caldarazzo, testified. Sarah Caldarazzo testified that she went to the same bar with [a]ppellant and Bull, where she spoke with Schlenoff several times. She testified that Schlenoff was rude to her, tried to grab her and that Westcoat said rude things to the three of them as well.

Sarah Caldarazzo testified that she could hear Bull, Westcoat and two other people coming towards them as they were walking to their car. She said Bull fought Schlenoff and that [a]ppellant fought one of the other men that had come up to their car with Schlenoff. She also testified that Schlenoff had fallen on top of Bull on the ground and held him by the shoulders and that Schlenoff would not get off of [sic]

Bull. She testified that Bull punched Schlenoff while Schlenoff was on top of Bull.

Jabin Mahone also testified on behalf of the defendants. Mahone testified that he knew Bull for twelve or fifteen years and knew [a]ppellant briefly. Mahone's testimony conflicted with Sarah Caldarazzo on the number of people involved in the fight, saying that he saw [a]ppellant, Bull, Webber, Westcoat and Schlenoff arguing. He says that the first fight was between [Schlenoff] and [Bull] and then Webber and Westcoat became involved.

During the closing, the Defense Counsel argued the inconsistencies in the testimony to the jury. The Commonwealth addressed these inconsistencies during closing argument and pointed out . . . the Defense witnesses' inconsistencies as well.

Trial court opinion, 10/5/17 at 2-6 (additional footnotes omitted).

The jury found appellant guilty of the aforementioned crimes. The trial court sentenced appellant to a term of 9 to 18 months' imprisonment followed by 2 years of probation.

Appellant filed a post-sentence motion in which he, in part, sought a new trial because the verdict was against the weight of the evidence. On June 30, 2017, the trial court denied the motion with respect to the request for a new trial based on the weight of the evidence. On July 5, 2017, appellant filed a notice of appeal. On July 10, 2017, the trial court ordered appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). After he received an extension, appellant complied with the order on September 5, 2017. The trial court issued its opinion pursuant to Pa.R.A.P. 1925(a) on October 5, 2017.

Appellant raises the following issue for this court's review: "The guilty verdict was against the weight of the evidence because it was based off of [sic] inconsistent testimony from witnesses who had a motive to lie and who were not credible." (Appellant's brief at 4.)

> [T]he weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact . . . thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence . . . rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.
>
> ***Commonwealth v. Kim***, 888 A.2d 847, 851 (Pa.Super. 2005) (citations and quotations omitted). A motion for a new trial based on a challenge to the weight of the evidence concedes the evidence was sufficient to support the verdict. ***Commonwealth v. Davis***, 799 A.2d 860, 865 (Pa.Super. 2002).

***Commonwealth v. Jarowecki***, 923 A.2d 425, 433 (Pa.Super. 2007).

Here, appellant contends that the trial court abused its discretion when it failed to grant the motion for a new trial. Appellant invites us to assess witness credibility and reweigh the evidence to convince us to reach a different result than the jury reached. We decline to do so. The jury, as fact-finder,

had the duty to determine the credibility of the testimony and the evidence at trial. **Commonwealth v. Talbert**, 129 A.3d at 536 (Pa.Super. 2015), **appeal denied**, 138 A.3d 4 (Pa. 2016). Appellate courts cannot and do not substitute their judgment for that of the fact-finder.

Our review of the record supports our conclusion that the trial court properly exercised its discretion in denying appellant's weight claim.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/28/2018