J-S66008-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MARIO TORRES | |
| Appellant | No. 2935 EDA 2018 |

Appeal from the Judgment of Sentence Entered August 24, 2018
In the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0002591-2017

BEFORE:  STABILE, NICHOLS, JJ., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY STABILE, J.:                    **FILED FEBRUARY 28, 2020**

Appellant Mario Torres appeals from the August 24, 2018 judgment of sentence entered in the Court of Common Pleas of Philadelphia County ("trial court"), following his jury conviction for conspiracy to commit kidnapping under 18 Pa.C.S.A. §§ 903 and 2901(a).  Upon review, we affirm.

The facts and procedural history of this case are undisputed.  As summarized by the trial court:

> On January 31, 2017, during late afternoon Agent Louis Schmidt of the Drug Enforcement Agency of the Federal Government was conducting an investigation in the area of a Metro PCS Cell Phone store situated on Frankford Avenue in Philadelphia when he observed Appellant and his three co-defendants exit the store and enter a red Jeep Cherokee.  When the jeep drove away, the agent followed the vehicle to Erie Avenue but lost it in traffic.  Upon losing visual contact with the vehicle, the agent contacted Officer Torres of the Philadelphia Police Department's Narcotics Enforcement Team so that Officer Torres could advise other police personnel of what the agent had just observed.  At the time, the agent was using a video camera and recorded the defendants leaving the store and entering the Jeep.

Agent Schmidt also informed Philadelphia Police Sergeant Wali Shabazz, assigned to the 25th District's Narcotics Team, what he had observed and that he thought that there was a good chance that a woman was going to be kidnapped. Based upon that information, Sgt. Shabazz and members of his team proceeded to the 2400 block of Aramingo Avenue, the location of a shopping plaza, where the sergeant had two members of his team watch the store in which the alleged victim worked. While driving around the lot, the sergeant saw a red Jeep that matched a description of the vehicle mentioned by Agent Schmidt driving in the parking lot of the shopping center and a black male later identified as Reginald Carroll, who had also been described by the agent. He informed the officers conducting the surveillance of the store about what he observed and left the lot to avoid the suspect from identifying his vehicle as a police vehicle.

Sergeant Shabazz drove a couple of blocks away and parked his car. While there, he received a radio call from the officers conducting the surveillance advising him that a woman had been grabbed by two men who forced her into a silver Toyota. The sergeant drove to the shopping center and he and other officers unsuccessfully attempted to box in the Jeep and the Toyota, which then were driven in different directions. Sergeant Shabazz pursued the Toyota, which crashed a couple of blocks from the shopping center. Upon crashing, Reginald Carroll and Cruz exited the Toyota and fled. The sergeant proceeded to the vehicle and had contact with the woman who had been abducted as other officers pursued the two males who ran from the Toyota. Appellant, who was depicted in a video recorded at the scene of the vehicle crash running from the vehicle, was apprehended a short time thereafter and brought over to the Toyota.

After the Toyota crashed, Agent Schmidt was informed that the Jeep was stopped on Aramingo Avenue and that a female, later identified as Crystal Reyes, the complainant herein, had been grabbed by those in the Jeep and placed in another car in the parking lot. The agent immediately drove to Lehigh Avenue and Thompson Street and learned that police were searching for the defendants. At some point, he had contact with Reginald Carroll who said, essentially, that he had not done anything. The agent showed Carroll a photograph of himself which the agent had copied from the video he recorded earlier that day.

In January of 2017, Ms. Reyes, who, at the time knew each of the defendants, worked at a dental office located in the shopping mall at 2400 Aramingo Avenue. On January 31, 2017, Ms. Reyes was at work and noticed a burgundy Jeep driving back and forth outside the dental office. When Ms. Reyes left work that day at about 7:45 p.m., she observed a male wearing clothes that covered him from head to toe walking toward her and another male wearing gray clothing that also covered his entire body get out of the Jeep and approach her. She also saw the Jeep she had seen earlier in the day parked outside another store. The males forced Ms. Reyes to get into her car, a silver Toyota that belonged

to her paramour, at which time the males, who, were in phone contact with Appellant who was giving them direction, took Ms. Reyes' cell phone and purse and told Ms. Reyes to be quiet and cooperate with them because they had her children.[1] One of the males then began driving the Toyota but almost immediately police vehicles drove up and their drivers unsuccessfully attempted to box in the Jeep, which was occupied by Appellant and co-defendant Rodriguez, and the Toyota containing Ms. Reyes and the two males. After a short pursuit the car containing Ms. Reyes crashed and the two men inside it fled. Police came up to the car and directed Ms. Reyes to stay inside it. Other officers chased after Carroll and Cruz and Carroll was apprehended shortly thereafter following a short pursuit.

Philadelphia Police Officers John Logan and his partner pursued the Jeep, in which co-defendant Rodriguez was driving and Appellant was sitting in the passenger seat. However, they lost the Jeep in traffic and later found it abandoned in the 3000 block of Livingston Street. During the pursuit, which continued for about fifty blocks, co-defendant Rodriguez committed numerous traffic violations.

Shortly after the Toyota crashed, the police brought Carroll to Ms. Reyes and in Sergeant Shabazz's presence, she identified Carroll as being the male who was wearing the gray sweater when she was abducted and who forced her into the Toyota. Subsequent thereto, Ms. Reyes was interviewed by police and told them about what happened to her when she left work. During the interview, she identified photographs depicting co-defendants Torres and Rodriguez.

On February 1, 2017, police conducted a second interview with Ms. Reyes. During it, she indicated that after the car crashed, she began driving the car and threw a gun that Carroll left in the Jeep when he fled it into a flowerpot. She also identified a photograph of co-defendant Cruz. She added that after giving her first statement to police she told her paramour about the gun she hid in the flowerpot and that he retrieved and ultimately brought to the police. She also identified a photograph of co-defendant Cruz and further stated that Carroll showed her a gun when he and Cruz accosted her and that Cruz was the person who took her purse and cell phone from her.

Mr. Elin Gonzalez-Ramirez was working as a cab driver in the evening when the incident herein occurred. At about 8:15 p.m., he went to 1100 Belgrade Street in Philadelphia, which was near where the Jeep was found, and picked up Appellant and co-defendant Rodriguez and drove them to the 4000 block of I Street in Philadelphia. Authorities also recovered a video from inside a

---

[1] Ms. Reyes recognized Appellant's voice. She could hear him telling Cruz to take her cell phone. N.T. Trial, 5/23/18 at 54-55.

- 3 -

bar near where the Jeep was located. It depicted Appellant and co-defendant Rodriguez together inside the bar.

A search of the Jeep resulted in the recovery of a driver's license in the name of Tashira Marie Rodriguez and a vehicle registration that indicated that the Jeep was registered to someone with the same name. They also recovered some photographs depicting Appellant and co-defendant Rodriguez and an unknown prison inmate and another depicting co-defendant Cruz with the same inmate. Four empty cell phone boxes and purchase receipts connected thereto, which showed that the phones had been purchased on January 31, 2017, were also seized. Police later matched cell phones found by police on the night of the incident and inside of a residence in the 3900 block of I Street to two of the empty boxes found inside the Jeep. One of the receipts listed co-defendant Rodriguez as a purchaser and another the complainant, Crystal Reyes.

Philadelphia Police Officer John Seigafuse was one of the officers who participated in the surveillance conducted at the shopping plaza on Aramingo Avenue. While so engaged, he saw the red Jeep and observed Carroll exiting from it. He also saw Carroll engage in a phone call and then enter a store following which he saw Carroll sit on the back of a truck and then take a gun out of his pocket, approached a female, and put her into a car. He then observed the unsuccessful attempt to box in the Jeep and the Toyota after which he proceeded to the location where the Toyota crashed where he witnessed Ms. Reyes identify Carroll.

Following the collection of the videos and other evidence, police obtained arrest warrants for Appellant, Cruz, and Rodriguez. Appellant and Rodriguez were arrested together inside of a residence in the 3900 block of I street.

Trial Court Opinion, 1/30/19 at 1-7 (record citations and some footnotes omitted) (sic). Following a jury trial, Appellant was found guilty of conspiracy to commit kidnapping.[2] On August 24, 2018, the trial court sentenced him to 10 to 20 years' imprisonment. Appellant filed timely post-sentence motions,

_____

[2] Appellant also was charged with numerous other charges, including kidnapping and weapons offenses. The jury, however, found him not guilty of those other charges. Appellant was tried jointly with Rodriguez, Carroll, and Cruz, each of whom also were convicted of conspiracy to commit kidnapping.

- 4 -

which the trial court denied on September 12, 2018. Appellant appealed to this Court. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant raises three issues for our review.

[I.] Is the evidence sufficient to convict [Appellant] of criminal conspiracy where the evidence only shows that [Appellant] was merely present at the scene of a crime and was a passenger in a vehicle that fled the scene of that crime?[3]

[II.] Is the verdict of guilty with respect to the charge of criminal conspiracy against the weight of the evidence and so contrary to the evidence that it shocks one's sense of justice insofar as the evidence, when properly viewed and weighed, establishes only that [Appellant] was merely present at the scene of a crime and was a passenger in a vehicle that fled the scene of that crime?[4]

---

[3] "A claim challenging the sufficiency of the evidence is a question of law." **Commonwealth v. Widmer**, 744 A.2d 745, 751 (Pa. 2000).

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Antidormi**, 84 A.3d 736, 756 (Pa. Super. 2014), **appeal denied**, 95 A.3d 275 (Pa. 2014).

[4] As this Court has explained:

On this issue, our role is not to consider the underlying question of whether the verdict was against the weight of the evidence.

[III.] Is the sentence imposed unduly harsh and excessive under the circumstances of this case?[5]

Appellant's Brief at 8.

Instantly, after careful review of the record, and the relevant case law, we conclude that the trial court accurately and thoroughly addressed the merits of Appellant's issues. **See** Trial Court Opinion, 1/30/19, at 7-14. With respect to the sufficiency challenge, based upon the evidence presented at trial, as detailed above and viewed in a light most favorable to the Commonwealth, we agree with the trial court's conclusion that the

_____

Rather, we are to decide if the trial court palpably abused its discretion when ruling on the weight claim. When doing so, we keep in mind that the initial determination regarding the weight of the evidence was for the factfinder. The factfinder was free to believe all, some or none of the evidence. Additionally, a court must not reverse a verdict based on a weight claim unless that verdict was so contrary to the evidence as to shock one's sense of justice.

**Commonwealth v. Habay**, 934 A.2d 732, 736-37 (Pa. Super. 2007) (internal citations omitted), **appeal denied**, 954 A.2d 575 (Pa. 2008). "[A] trial court's denial of a post-sentence motion 'based on a weight of the evidence claim is the least assailable of its rulings.'" **Commonwealth v. Sanders**, 42 A.3d 325, 331 (Pa. Super. 2012) (quoting **Commonwealth v. Diggs**, 949 A.2d 873, 880 (Pa. 2008)).

[5] When reviewing a challenge to the trial court's discretion, our standard of review is as follows:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will.

**Commonwealth v. Bowen**, 55 A.3d 1254, 1263 (Pa. Super. 2012) (quoting **Commonwealth v. Cunningham**, 805 A.2d 566, 575 (Pa. Super. 2002)), **appeal denied**, 64 A.3d 630 (Pa. 2013).

Commonwealth proved beyond a reasonable doubt that Appellant conspired to commit kidnapping. As the trial court explained: (1) Appellant drove to the scene with his co-defendants; (2) went into the cell phone store with them; (3) returned to the vehicle in which all of them traveled to the shopping center; (4) directed co-defendants Carroll and Cruz while they detained the complainant who recognized Appellant's voice; (5) fled from the scene with co-defendant Rodriguez when the police converged on the Jeep and the Toyota; (6) engaged in evasive behavior after he and Rodriguez abandoned the Jeep; (7) was identified by a police officer who observed him sitting in the Jeep at the scene; and (8) was located and arrested in a residence with his co-defendant where police seized incriminating evidence. *Id.* at 8-11. Furthermore, with respect to Appellant's weight of the evidence claim, based upon our review of the record, as detailed above, we find no abuse of discretion on the part of the trial court for concluding its sense of justice was not shocked by the verdict. *Id.* at 7-8. Finally, the trial court did not abuse its discretion in sentencing Appellant to 10 to 20 years' imprisonment as it duly considered and weighed mitigating circumstances and provided sufficient reasons on the record in support of the sentence. *Id.* at 11-14. Accordingly, we affirm Appellant's August 24, 2018 judgment of sentence. We further direct that a copy of the trial court's January 30, 2019 opinion be attached to any future filings in this case.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/28/20

**IN THE COURT OF COMMON PLEAS PHILADELPHIA**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**TRIAL DIVISION-CRIMINAL SECTION**

COMMONWEALTH OF PENNSYLVANIA    : PHILADELPHIA COURT
   : OF COMMON PLEAS
   : CRIMINAL TRIAL DIVISION
   :
         v.    : CP-51-CR-0002591-2017
   :

CP-51-CR-0002591-2017 Comm. v. Torres, Mario
Opinion

MARIO TORRES



8221116191

OPINION

**FILED**

JAN 3 0 2019

Appeals/Post Trial
Office of Judicial Records

**MCCAFFERY, J**

Mario Torres, (hereinafter "Appellant") appeals from the judgment of sentence imposed on August 24, 2018. For the reasons set forth below, it is suggested that the judgment of sentence be affirmed.

**PROCEDURAL HISTORY**

On May 22, 2018, Appellant appeared before this Court for a jury trial and was found guilty of the crime of Conspiracy to Commit Kidnapping, 18 Pa.C.S. § 903, graded as a felony. [1] On August 24, 2018, this Court imposed a sentence of ten to twenty years' incarceration. On August 31, 2018, Appellant filed a post-sentence motion, which this Court denied on September 12, 2018. Appellant thereafter filed a timely notice of appeal and a counseled court-ordered Pa.R.A.P. 1925(b) Statement of Matters to be raised on Appeal.

---

[1] Appellant was also charged with numerous other charges, including Kidnapping and weapons offenses. The jury found him not guilty of those other charges. Appellant was tried jointly with Tashira Rodriguez, Reginald Carroll, and Michael Cruz, each of whom were also convicted of Conspiracy to Commit Kidnapping.

1

## FACTUAL HISTORY

On January 30, 2017, during late afternoon Agent Louis Schmidt of the Drug Enforcement Agency of the Federal Government was conducting an investigation in the area of a Metro PCS Cell Phone store situated on Frankford Avenue in Philadelphia when he observed Appellant and his three co-defendants exit the store and enter a red Jeep Cherokee. (N.T. 5/23/18, 6-9, 20). When the Jeep drove away, the agent followed the vehicle to Erie Avenue but lost it in traffic. (N.T. 5/23/17, 14). Upon losing visual contact with the vehicle, the agent contacted Officer Torres of the Philadelphia Police Department's Narcotics Enforcement Team so that Officer Torres could advise other police personnel of what the agent had just observed. (N.T. 5/23/18, 14-15). At the time, the agent was using a video camera and recorded the defendants leaving the store and entering the Jeep. (N.T. 5/23/18, 9).

Agent Schmidt also informed Philadelphia Police Sergeant Wali Shabazz, assigned to the 25th District's Narcotics Enforcement Team, what he had observed and that he thought that there was a good chance that a woman was going to be kidnapped. (N.T. 5/24/18, 6-9). Based upon that information, Sgt. Shabazz and members of his team proceeded to the 2400 block of Aramingo Avenue, the location of a shopping plaza, where the sergeant had two members of his team watch the store in which the alleged victim worked. (N.T. 5/24/18, 11). While driving around the lot, the sergeant saw a red Jeep that matched a description of the vehicle mentioned by Agent Schmidt driving in the parking lot of the shopping center and a black male later identified as Reginald Carroll, who had also been described by the agent. (N.T. 5/24/18, 12). He informed the officers conducting the surveillance of the store about what he observed and left the lot to avoid the suspect from identifying his vehicle as a police vehicle. (N.T. 5/24/18, 12).

Sergeant Shabazz drove a couple of blocks away and parked his car. While there, he

received a radio call from the officers conducting the surveillance advising him that a woman had been grabbed by two men who forced her into a silver Toyota. (N.T. 5/24/18, 13). The sergeant drove to the shopping center and he and other officers unsuccessfully attempted to box in the Jeep and the Toyota, which then were driven in different directions. (N.T. 5/24/18, 13-14). Sergeant Shabazz pursued the Toyota, which crashed a couple of blocks from the shopping center. (N.T. 5/24/18, 14). Upon crashing, Reginald Carroll and Cruz exited the Toyota and fled. (N.T. 5/24/18, 17-18). The sergeant proceeded to the vehicle and had contact with the woman who had been abducted as other officers pursued the two males who ran from the Toyota. (N.T. 5/24/18, 17-18). Appellant, who was depicted in a video recorded at the scene of the vehicle crash running from the vehicle, was apprehended a short time thereafter and brought over to the Toyota. (N.T. 5/24/18, 18).

After the Toyota crashed, Agent Schmidt was informed that the Jeep was stopped on Aramingo Avenue and that a female, later identified as Crystal Reyes, the complainant herein, had been grabbed by those in the Jeep and placed in another car in the parking lot. (N.T. 5/23/18, 15-16). The agent immediately drove to Lehigh Avenue and Thompson Street and learned that police were searching for the defendants. (N.T. 5/23/18, 16). At some point, he had contact with Reginald Carroll who said, essentially, that he had not done anything. (N.T. 5/23/18, 16). The agent showed Carroll a photograph of himself which the agent had copied from the video he recorded earlier that day. (N.T. 5/23/18, 16).

In January of 2017, Ms. Reyes, who, at the time knew each of the defendants, worked at a dental office located in the shopping mall at 2400 Aramingo Avenue. (N.T. 5/23/18, 40-42). On January 31, 2017, Ms.Reyes was at work and noticed a burgundy Jeep driving back and forth outside the dental office. (N.T. 5/23/17, 54). When Ms. Reyes left work that day at about 7:45

3

p.m., she observed a male wearing clothes that covered him from head to toe walking toward her and another male wearing gray clothing that also covered his entire body get out of the Jeep and approach her. (N.T. 5/23/18, 49, 54).[2] She also saw the Jeep she had seen earlier in the day parked outside another store. (N.T. 5/23/18, 54). The males forced Ms. Reyes to get into her car, a silver Toyota that belonged to her paramour[3], at which time the males, who, were in phone contact with Appellant who was giving them directions, took Ms. Reyes' cell phone and purse and told Ms. Reyes to be quiet and cooperate with them because they had her children. (N.T. 5/23/18, 49-51, 54). One of the males then began driving the Toyota but almost immediately police vehicles drove up and their drivers unsuccessfully attempted to box in the Jeep, which was occupied by Appellant and co-defendant Rodriguez, and the Toyota containing Ms. Reyes and the two males. (N.T. 5/23/17, 49; 5/24/18, 96-97, 105). After a short pursuit the car containing Ms. Reyes crashed and the two men inside it fled. (N.T. 5/23/18, 50-51, ). Police came up to the car and directed Ms. Reyes to stay inside it. (N.T. 5/23/18, 50).[4] Other officers chased after Carroll and Cruz and Carroll was apprehended shortly thereafter following a short pursuit. (N.T. 5/24/18, 43-48).

Philadelphia Police Officers John Logan and his partner pursued the Jeep, in which co-defendant Rodriquez was driving and Appellant was sitting in the passenger seat. (5/24/18, 96-98). However, they lost the Jeep in traffic and later found it abandoned in the 3000 block of

---

[2] When Ms. Reyes denied remembering anything about the incident, the Commonwealth introduced her statement to police as substantive evidence. (N.T. 5/23/18, 44). The details of the incident outlined herein were contained in that statement.

[3] Although Ms. Reyes referred to the person who owned the car as her husband, they were not married.

[4] There were working video cameras in the shopping plaza and the location where the car crashed. Police thereafter recovered video recordings depicting Appellant in the shopping plaza, the Toyota crashing, and Carroll and Cruz fleeing from the car. The video taken where the car crashed also depicted Ms. Reyes making a phone call and discarding the gun also depicted Ms. Reyes making a phone call and discarding the gun after the vehicle came to a stop and the men had fled..

4

Livingston Street. (N.T. 5/24/18, 98). During the pursuit, which continued for about fifty blocks, co-defendant Rodriguez committed numerous traffic violations. (N.T. 5/24/18, 108, 110-111).

Shortly after the Toyota crashed, the police brought Carroll to Ms. Reyes and in Sergeant Shabazz's presence, she identified Carroll as being the male who was wearing the gray sweater when she was abducted and who forced her into the Toyota. (N.T. 5/23/18, 53, 66; 5/24/18, 18).[5] Subsequent thereto, Ms. Reyes was interviewed by police and told them about what has happened to her when she left work. (N.T. 5/23/18, 55, 75, 147-192). During the interview, she identified photographs depicting co-defendants Torres and Rodriguez. (N.T. 5/23/17, 55-57, 132, 132).

On February 1, 2017, police conducted a second interview with Ms. Reyes. (N.T. 5/23/18, 194-221). During it, she indicated that after the car crashed, she began driving the car and threw a gun that Carroll left in the Jeep when he fled it into a flowerpot. (N.T. 5/23/18, 58-60, 73, 84). She also identified a photograph of co-defendant Cruz. (N.T. 5/23/17, 64; 5/25/18, 10-12). She added that after giving her first statement to police she told her paramour about the gun she hid in the flower pot and that he retrieved and ultimately brought to the police. (N.T. 5/23/18, 60-61, 91-92). She also identified a photograph of co-defendant Cruz and further stated that Carroll showed her a gun when he and Cruz accosted her and that Cruz was the person who took her purse and cell phone from her. (N.T. 5/23/18, 62-63, 65, 67).

Mr. Elin Gonzalez-Ramirez was working as a cab driver the evening when the incident herein occurred. At about 8:15 p.m., he went to 1100 Belgrade Street in Philadelphia, which was near where the Jeep was found, and picked up Appellant and co-defendant Rodriguez and drove

---

[5] Ms. Reyes testified that she was afraid to identify him by name in public so she simply said that he was the male in the gray sweater. (N.T. 5/23/18, 53).

them to the 4000 block of I Street in Philadelphia. (N.T. 5/23/18, 135-142). Authorities also recovered a video from inside a bar near where the Jeep was located. It depicted Appellant and co-defendant Rodriguez together inside the bar. (N.T. 5/24/18, 117-120, 151-155).

A search of the jeep resulted in the recovery of a driver's license in the name of Tashira Marie Rodriguez and a vehicle registration that indicated that the Jeep was registered to someone with the same name. (N.T. 5/24/18, 127-128). They also recovered some photographs depicting Appellant and co-defendant Rodriguez and an unknown prison inmate and another depicting co-defendant Cruz with the same inmate. (N.T. 5/24/18, 127, 128, 129). Four empty cell phone boxes and purchase receipts connected thereto, which showed that the phones had been purchased on January 31, 2017, were also seized. (N.T. 5/24/18, 129-130). Police later matched cell phones found by police on the night of the incident and inside of a residence in the 3900 block of I Street to two of the empty boxes found inside the Jeep. (N.T. 5/24/18, 130-133; N.T. 5/25/18, 9). One of the receipts listed co-defendant Rodriguez as a purchaser and another the complainant, Crystal Reyes. (N.T. 5/24/18, 134).[6]

Philadelphia Police Officer John Seigafuse was one of the officers who participated in the surveillance conducted at the shopping plaza on Aramingo Avenue. While so engaged, he saw the red Jeep and observed Carroll exiting from it. (N.T. 5/24/18, 59). He also saw Carroll engage in a phone call and then enter a store following which he saw Carroll sit on the back of a truck and then take a gun out of his pocket, approached a female, and put her into a car. (N.T. /24/18, 60-62, 76-77). He then observed the unsuccessful attempt to box in the Jeep and the Toyota after which he proceeded to the location where the Toyota crashed where he witnessed Ms. Reyes identify Carroll. (N.T. 5/24/18, 63-64).

---

[6] A video recording recovered by police from inside the cell phone store depicted Appellant and co-defendants Rodriguez, and Cruz interacting with a salesperson. (N.T. 5/24/18, 137-139, 142-143).

6

Following the collection of the videos and other evidence, police obtained arrest warrants for Appellant, Cruz, and Rodriguez. (N.T. 5/24/18, 156). Appellant and Rodriquez were arrested together inside of a residence in the 3900 block of I street. (N.T. 5/24/18, 157).

## DISCUSSION

In his 1925(b) statement Appellant first argues that the argues that the verdict finding him guilty of Conspiracy to Commit Kidnapping was against the weight of the evidence because the it, at most, established that Appellant was merely present when others engaged in criminal conduct and was a passenger in a vehicle that fled the scene. It is respectfully suggested that relief be denied with respect to this claim because this Court did not commit an abuse of discretion by denying Appellant's weight of the evidence claim.

The standard in reviewing a weight of the evidence claim is well-settled:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's convict ion that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

Commonwealth v. Clay, 64 A.3d 1049, 1055 (Pa. 2013) (emphasis and citations omitted); see also Commonwealth v. Sanchez, 36 .3d 24, 27 (Pa. 2011) (stating that "[r]elief on a weight of the evidence claim is reserved for extraordinary circumstances, when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be give n another opportunity to prevail." (citation omitted)).

The initial determination regarding the weight of the evidence is for the fact-finder.

Commonwealth v. Jarowecki, 923 A.2d 425, 433 (Pa. Super. 2007). The trier of fact is free to believe all, some or none of the evidence. Id. A reviewing court is not permitted to substitute its judgment for that of the fact-finder. Commonwealth v. Small, 741 A.2d 666, 672 (Pa. 1999). When the challenge to the weight of the evidence is predicated on the credibility of trial testimony, appellate review of a trial court's decision is extremely limited. Unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, weight of evidence claims shall be rejected. Commonwealth v. Rossetti, 863 A.2d 1185, 1191 (Pa. Super. 2004).

Here, applying the above standards to the instant matter, this Court correctly concluded that the verdict does not shock the conscience. The evidence here showed that Appellant acted in concert with his three co-defendants. He: 1.) drove to the scene with his co-defendants; 2.) went into the cell phone store with them; 3.) returned to the vehicle in which all of them traveled to the shopping center; 4.) directed co-defendants Carroll and Ruiz while they detained the complainant, who recognized Appellant's voice; 5.) fled from the scene with co-defendant Rodriguez when the police converged on the Jeep and the Toyota; 6.) engaged in evasive behavior after he and Rodriguez abandoned the Jeep; 7.) was identified by a police officer sitting in the Jeep at the scene; and 8.) was located and arrested in a residence with his co-defendant where police seized incriminating evidence. All of this evidence established that Appellant conspired to commit the crime of kidnapping and clearly shows that the verdict does not shock the conscience. Thus, it is respectfully suggested that the ruling denying Appellant's weight claim be affirmed.

Next, Appellant asserts that the evidence was insufficient to sustain his conviction for the same reason he claimed that the verdict was against the weight of the evidence, namely, he was

merely present when others engaged in criminal conduct and was a passenger in a vehicle that fled the scene. Appellant's myopic view of the evidence notwithstanding, a review of the evidence clearly established Appellant's guilt beyond a reasonable doubt.

> [T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction... does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, it must determine simply whether the evidence believed by the fact-finder was sufficient to support the verdict... [A]ll of the evidence and any inferences drawn therefrom must be viewed in the light most favorable to the Commonwealth as the verdict winner.

Commonwealth v. Ratsamy, 934 A.2d 1233, 1235-1236 (Pa. 2007) (emphasis in original).

In addition, the Commonwealth need not establish guilt to a mathematical certainty, and it may sustain its burden by means of wholly circumstantial evidence. Commonwealth v. Duncan, 932 A.2d 226, 231 (Pa. Super. 2007) (citation omitted). A reviewing court may not substitute its judgment for that of the fact finder, and where the record contains support for the convictions, they may not be disturbed. Id. Lastly, the finder of fact is free to believe some, all, or none of the evidence presented. Commonwealth v. Hartle, 894 A.2d 800, 804 (Pa. Super. 2006).

"To sustain a conviction for Criminal Conspiracy, the Commonwealth must prove beyond a reasonable doubt that the defendant (1) entered into an agreement to commit or aid in an a [sic] criminal act with another person or persons (2) with a shared criminal intent and that (3) an overt act was done in furtherance of the conspiracy." Commonwealth v. Bostick, 958 A.2d 543, 560 (Pa. Super. 2008) (quoting Commonwealth v. Johnson, 920 A.2d 873, 878 (Pa.Super. 2007)).

The Commonwealth may sustain its burden of proving a conspiracy wholly by means of circumstantial evidence. Commonwealth v. Perez, 931 A.2d 703, 708 (Pa. Super. 2007).

An agreement to commit a criminal act may be proven by reasonable inferences, but not by suspicion or speculation. Id. An agreement can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode. These factors may coalesce to establish a conspiratorial agreement beyond a reasonable doubt where one factor alone might fail.

\* \* \*

Circumstances like an association between alleged conspirators, knowledge of the commission of the crime, presence at the scene of the crime, and/or participation in the object of the conspiracy, are relevant when taken together in context, but individually each is insufficient to prove a conspiracy.

Id.

Applying the foregoing to the evidence presented at trial easily leads to the conclusion that the Commonwealth sustained its burden of proving that Appellant conspired with his three co-defendants to kidnap the complainant. This is so because he acted in concert with his co-defendants prior to, during, and after the kidnapping occurred. In fact, the evidence showed that he was the leader of the others as he was the one directing Cruz and Carroll after they put the complainant in her vehicle. Although Appellant is correct that mere association and mere presence at the scene of the crime are alone sufficient to sustain a conspiracy conviction, see Commonwealth v. Swerdlow, 636 A.2d 1173, 1177 (Pa. Super. 1994), the evidence here showed much more than that as noted above in the discussion of Appellant's weight claim including that he arrived at the scene, remained there with, and then fled with his co-defendants. This evidence, viewed together in a light most favorable to the Commonwealth, was more than sufficient to sustain the Appellant's conspiracy conviction. See Commonwealth v. Davalos, 779 A.2d 1190, 1194 (Pa Super. 2001) (evidence sufficient for conspiracy conviction where appellant drove a friend to a particular location, waited while that friend fired eight shots from the car

10

window at a group of men, and then sped away from the scene); Commonwealth v. Olds, 459 A.2d 1072, 1075 (Pa Super. 1983) (appellant's convictions for second-degree murder, robbery, and conspiracy upheld even though appellant did not directly participate in the robbery or the murder; emphasizing that appellant and his cohorts arrived together and left together, the Court inferred a conspiracy from his association with the other alleged conspirators, knowledge of the crime, and presence at the scene), Commonwealth v. Johnson, 402 A 2d 507, 509 (Pa 1979) (evidence sufficient for conspiracy conviction where appellant allegedly entered a restroom with a group of men, watched while those men robbed someone, then fled the room with the robbers). Accordingly, for all of the foregoing reasons, it is suggested that the Honorable Court find Appellant's sufficiency claim meritless.

In his final issue, Appellant contends that this Court committed an abuse of discretion by imposing the maximum sentence possible on him because the sentence is excessive and the Court did not consider Appellant's mitigating evidence including that he participated in rehabilitation programs while incarcerated, suffered from depression, was addicted to drugs and alcohol, and suffered from significant trauma when he was young. Relief should be denied because the sentence imposed did not amount to an abuse of discretion and the Court did consider Appellant's mitigating evidence.

A trial court's sentencing decision will not be disturbed absent a manifest abuse of discretion. Commonwealth v. Smith, 673 A.2d 893, 895 (Pa. 1996) (citations omitted). "The sentencer has broad discretion to choose a penalty from sentencing alternatives and the range of permissible confinements, provided the choices are consistent with the protection of the public, the gravity of the offense, and the rehabilitative needs of the defendant." Commonwealth v. Devers, 546 A.2d 12, 13 (Pa. 1988); see also 42 Pa.C.S. § 9721(b). An appellate court is required

11

to accord the sentencing court great weight as it is in the best position to view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime. Commonwealth v. Clever, 576 A.2d 1108, 1110 (Pa. Super. 1990). If a sentence is within the statutory limits, the reviewing court will only find an abuse of discretion where a sentence is so manifestly excessive that if inflicts too severe a punishment. Commonwealth v. Kahley, 539 A.2d 389, 390 (Pa. Super. 1988). , "The proper standard of review when considering whether to affirm a court's sentencing determination is an abuse of discretion. An abuse of discretion is more than a mere error in judgment; thus a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. Commonwealth v. Walls, 926 A.2d 957, 961 (Pa. 2007), citing Commonwealth v. Smith, 673 A.2d 893, 895 (Pa. 1996). In imposing a sentence, the court must consider the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community and the rehabilitative needs of the defendant as well as the sentencing guidelines. 42 Pa. C.S. § 9721(b), Walls, 926 A.2d at 963.

Applying the foregoing to Appellant's assertions, it is clear that Appellant's complaint that this Court did not consider Appellant's mitigating evidence is not really a claim that this Court did not consider the mitigating evidence or other sentencing factors, but that it did not give it the weight that he feels his mitigation evidence deserved. Appellant simply ignores that the balancing of the various sentencing factors is within the sole discretion of the sentencing judge - not that of Appellant. See Commonwealth v. Bricker, 41 A.3d 872 (Pa. Super. 2012) (the weighing of factors under [42 Pa. C.S.] § 9721(b) is exclusively for the sentencing court, and an appellate court could not substitute its own weighing of those factors). Appellant has set forth no evidence, law or argument that would otherwise support a finding that the sentencing court

12

should have given his mitigating evidence more weight when deciding upon an appropriate sentence.

In any event, this Court did review the pre-sentence reports, which set forth Appellant's life history and attempts to rehabilitate himself and carefully listened to Appellant's counsel's recitation of the mitigating circumstances that counsel believed called for the imposition of a shorter sentence. As noted, the fact that this Court discounted the mitigating evidence and determined that it did not call for a reduced sentence does not amount to an abuse of discretion especially given Appellant's history of criminal conduct, his conduct in the instant matter, which put the complainant and other Philadelphians in danger, and Appellant's lack of remorse for his obvious criminal conduct in the instant matter.

Finally, Appellant's sentence was not excessive in light of the seriousness of the underlying matter and the fact that Appellant was the mastermind and leader of the others in the kidnapping of the complainant. Absent his involvement therein the incident may not have even occurred. Moreover, Appellant's criminal conduct herein and in his other cases established to this Court that Appellant posed a threat to other persons that required a long sentence to protect them from his predatory behavior. Lastly, as noted above, Appellant was not remorseful, and, in fact, argued during the sentencing hearing that he was actually innocent in spite of the wealth of evidence establishing his guilt. (N.T. 8/24/18, 18-20). Thus, this Court considered all relevant factors in deciding upon Appellant's sentence. That it is what the law requires, and it is suggested that the Honorable Court deem Appellant's sentencing issues to be lacking in merit.

13

## CONCLUSION

Based on the foregoing, it is respectfully suggested that the judgments of sentence entered in this matter against Appellants be affirmed.

BY THE COURT,

Date: January 30, 2019

_____
Daniel D. McCaffery, J.