J. S83009/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| DARRYL DANTE RODGERS, | : | No. 2016 WDA 2015 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, November 20, 2015,
in the Court of Common Pleas of Allegheny County
Criminal Division at No. CP-02-CR-0011477-2014

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN AND STRASSBURGER,* JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED DECEMBER 22, 2016**

Darryl Dante Rodgers appeals the November 20, 2015 judgment of sentence in which the Court of Common Pleas of Allegheny County sentenced him to serve a term of five to ten years' imprisonment in a state correctional institution for carrying a firearm when he was a person not permitted to carry a firearm.  18 Pa.C.S.A. § 6105.[1]  The trial court also found appellant guilty of terroristic threats with intent to terrorize another[2] but imposed no further penalty.

---

* Retired Senior Judge assigned to the Superior Court.

[1] Appellant was previously convicted of robbery.

[2] 18 Pa.C.S.A. § 2706(a)(1).

The relevant facts and testimony, as recounted by the trial court, are as follows:

> The Victim, Bernard Taylor, testified that he lives at 2339 Atmore Street. On June 18, 2014, Taylor came home from work to find [a]ppellant sitting on his porch. Taylor related that he has been having issues with [a]ppellant sitting on his porch without permission for over two years. Taylor testified that he told [a]ppellant, "I know you're not settling on my porch again" and [a]ppellant responded with "a few choice words." Taylor testified that [a]ppellant "called him a bitch and said he would slap the shit out of him." Taylor testified that he responded to [a]ppellant by saying "you're dumb," "this is dumb," "I'm walking away" and then [a]ppellant followed Taylor and threatened to shoot him. Taylor then pulled out his firearm, which he has a license to carry, and told [a]ppellant to walk away. Appellant responded by saying, "I have something for you." Taylor testified that [a]ppellant then took off running down the opposite side of the street and then cut through an alleyway or pathway between two houses. After [a]ppellant ran off, Taylor went into his house, called 911 and then came back outside. He was on his porch talking with Lonnie Vernon. Minutes later, Vernon pointed behind Taylor warning him that [a]ppellant had returned with a gun. Taylor turned and observed [a]ppellant on the corner, at 2344 Atmore Street, but did not see a gun. Taylor testified that the police responded to his 911 call "pretty quickly" and it was around this time that they arrived and arrested [a]ppellant.

> Lonnie Vernon testified that he was visiting a friend who lives next door to Taylor on June 18, 2014. Vernon testified that he observed [a]ppellant sitting on Taylor's porch. When Taylor got home, an altercation occurred between Taylor and [a]ppellant regarding [a]ppellant's unwelcomed presence on Taylor's porch. Vernon stated that Taylor "t[old] [appellant] every day [to] get off his porch." Vernon testified that after the altercation, [a]ppellant ran

- 2 -

down Atmore Street, about two or three houses down, went between two houses and then about two minutes later came back up into an empty lot right beside the empty house at 2344 Atmore Street with a rifle. Vernon testified that the rifle had duct tape on the end and [a]ppellant was standing on the corner, beside the house, "ready to shoot."

Vernon stated that at the time [a]ppellant reappeared, Taylor was outside talking to him. Vernon told Taylor, "watch out, there he go [sic] right there." About a minute or two after Taylor turned to look at [a]ppellant, [a]ppellant disappeared. Vernon estimated that [a]ppellant was standing roughly 30-40 feet away, about three houses up, when he observed [a]ppellant holding the rifle. Vernon stated that "he was trying to get in the house because he thought that if [appellant] would have shot Taylor, [the bullet] would have [gone] through Taylor and hit him." Vernon observed [a]ppellant run back down behind the houses, then reappear a short time later between the same two houses without the rifle, "like he ain't [sic] did nothing." Vernon stated that the incident happened "so quick[ly]. [Appellant] went and got the gun and got rid of it so quick[ly]." Vernon testified that the police showed up just as [a]ppellant re-emerged and he pointed [a]ppellant out to police. Vernon estimated that the entire episode took approximately 10 minutes.

Trial court opinion, 7/11/16 at 5-7 (footnote and citations omitted).

The trial court also noted the following additional key facts:

Officer Gary Messer, a City of Pittsburgh Police Officer, testified that he recovered a rifle in an open, unattached garage located directly behind 2344 Atmore Street. Officer Messer testified that the garage appeared dirty and abandoned. The rifle, matching the description a witness provided to him of the weapon involved, was on the shelf near the entrance to the garage. He also recovered a box of .243 caliber ammunition and multiple loose

.243 caliber rounds on the shelf and the rifle was loaded with one live .243 caliber round. . . .

Officer Messer testified that the rifle was submitted to the Allegheny County Crime Lab for testing and it was found to be in good operating condition. He stated that the barrel length of the firearm was 22 inches and there was duct tape on the rear of the stock which was partially cut off and manipulated to be shorter.

*Id.* at 3-4 (citations omitted).

In addition, Floretta Moore ("Moore"), appellant's girlfriend and with whom he lived, testified that appellant ran into their residence between 4:30 and 5:00 p.m. on June 18, 2014, and left a minute or two later to "clear his name." (Notes of testimony, 8/25/15 at 151-152, 157.) Moore did not observe appellant with a firearm, even after she ran after him when he left the residence. (*Id.* at 161.)

The jury found appellant guilty of possession of a firearm by a prohibited person. The trial court sentenced appellant to a term of five to ten years' imprisonment.

On November 23, 2015, appellant filed a post-sentence motion which the trial court denied on November 24, 2015.

Appellant timely appealed to this court and raises the following issue for this court's review: "Did the trial court abuse its discretion by finding that a guilty verdict was not against the weight of the evidence when the unreliable testimony of the main witness was so untrustworthy that to base

a verdict on this evidence was manifestly unreasonable?" (Appellant's brief at 4 (capitalization omitted).)

Appellant contends that he is entitled to a new trial because the trial court abused its discretion when it failed to find that the verdict was against the weight of the evidence when Lonnie Vernon ("Vernon"), the only witness to testify that he saw appellant with a gun, presented confusing testimony that lacked coherence regarding the events that occurred.

> [T]he weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact . . . thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence . . . rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.
>
> *Commonwealth v. Kim*, 888 A.2d 847, 851 (Pa.Super. 2005) (citations and quotations omitted). A motion for a new trial based on a challenge to the weight of the evidence concedes the evidence was sufficient to support the verdict. *Commonwealth v. Davis*, 799 A.2d 860, 865 (Pa.Super. 2002).

*Commonwealth v. Jarowecki*, 923 A.2d 425, 433 (Pa.Super. 2007).

Specifically, appellant asserts that Vernon's testimony regarding appellant's actions was difficult to piece together. For instance, Vernon testified that Bernard Taylor watched appellant stand with a gun for two minutes. (Notes of testimony, 8/25/15 at 64-65.) Taylor himself testified that he did not see appellant with a gun. (*Id.* at 45.) Similarly, appellant argues that Vernon's testimony as to where he saw appellant go after the argument with Taylor makes no sense as the time frames related by Vernon were unrealistic. Also, appellant argues that Vernon's testimony changed from the initial testimony presented at a motion prior to trial to his testimony at trial and from the police report to his testimony at trial. Because no other witness claimed to see appellant with a gun, appellant argues that reliance on this inconsistent testimony to convict appellant meant that the verdict shocked the conscience and the trial court abused its discretion when it denied appellant's post-sentence motion for a new trial. Without credible evidence tying appellant to the firearm that was recovered by Officer Messer, appellant believes that he should not have been convicted.

With respect to this issue, the trial court concluded:

> Vernon's testimony . . . remained consistent with respect to his account of the critical facts. In particular, Vernon gave police a description of the weapon, a rifle with duct tape around the butt, before police retraced [a]ppellant's steps and recovered the rifle matching that description from an open, abandoned garage.

> Due to confusion regarding maps and time frames, both the defense and the Commonwealth repeatedly asked Vernon to reiterate what he had observed on June 18, 2014. Each time Vernon testified consistently. Vernon testified, consistent with Taylor's testimony, that [a]ppellant and Taylor quarreled over [a]ppellant's presence on Taylor's porch and then [a]ppellant ran down the street between two houses. Vernon consistently testified that [a]ppellant returned to the empty lot holding a rifle. Although Vernon was the only witness to observe [a]ppellant with the firearm, he and Taylor testified consistently that roughly two to three minutes passed from when [a]ppellant ran down the street between the two houses to when he reappeared the first time in the empty lot. Vernon repeatedly stated that [a]ppellant disappeared with the rifle, ran back down behind the two houses and then reappeared between the same two houses without the rifle, "like he ain't [sic] did nothing" before he was apprehended by police. Each time Vernon recited his testimony, he added more or less detail, but the critical facts remained unchanged.

Trial court opinion, 7/11/16 at 8-9 (citation omitted).

A review of the record supports the trial court's conclusion. Vernon testified that on June 18, 2014, he observed appellant and Taylor arguing and then observed appellant running down between two houses only to re-emerge with a rifle. (Notes of testimony, 8/25/15 at 52-53.) Vernon described the rifle appellant was holding: "It had duct tape on the handles, and he was standing on the corner . . . besides [sic] the house, ready to shoot." (*Id.* at 60.) Vernon also testified that appellant then left, and when Vernon next saw him, he no longer had the rifle. (*Id.* at 62.) Vernon's testimony corroborated that of the arresting officer who noted that appellant

was unarmed when he was apprehended. It also corroborated Officer Messer's testimony that he recovered a rifle with the end covered in duct tape near where Vernon saw appellant leave his sight. Appellant is correct that there are some inconsistencies in Vernon's testimony regarding the time it took for the events in question to take place and whether Taylor brandished his weapon in front of appellant. Based on Vernon's testimony along with that of Taylor and Officer Messer, the jury, as fact-finder, could conclude that appellant was in possession of a gun. A jury is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses; and a new trial based on a weight of the evidence claim is only warranted where the jury's verdict is so contrary to the evidence that it shocks one's sense of justice. *Commonwealth v. Houser*, 18 A.3d 1128 (Pa. 2011).

Here, the jury evidently accepted Vernon's testimony that he saw appellant with a firearm. The verdict was not so contrary to the evidence as to shock one's sense of justice. Accordingly, the trial court did not abuse its discretion when it denied appellant's motion for a new trial.

Judgment of sentence affirmed.

J. S83009/16

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date:  12/22/2016